**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**
_____

MARK RIVERA,

                Plaintiff,

v.                                          No.  CV 14-00780 WJ/GBW

LOS ALAMOS NATIONAL SECURITY, LLC,

                Defendant.

## MEMORANDUM OPINION AND ORDER
## REMANDING TO STATE COURT PURSUANT TO 28 U.S.C. 1447(C)

THIS MATTER comes before the Court upon Defendant Los Alamos National Security, LLC's Notice of Removal (**Doc. 1**), filed August 27, 2014, and upon Defendant's Motion to Dismiss Plaintiff's Complaint (**Doc. 7**), filed September 26, 2014. Having reviewed the parties' briefs and applicable law, the Court finds that it lacks subject-matter jurisdiction over this action. Accordingly, pursuant to 28 U.S.C. § 1447(c), this matter is REMANDED to state court.

### BACKGROUND

According to the allegations in the complaint, which the Court accepts as true for present purposes, Plaintiff Mark Rivera was employed by Defendant at Los Alamos National Laboratory until his termination on November 12, 2013. When Plaintiff self-reported in October 2012 that he had been charged with misdemeanor hunting law violations, Defendant suspended his security clearance, acquired his New Mexico Game and Fish Department file, and forwarded that file to the Department of Energy. Plaintiff claims that Defendant's personnel "viewed [him] as an unlawful hunter" and thereafter "were motivated in part by the goal of causing revocation of

Case 1:14-cv-00780-WJ-GBW   Document 19   Filed 02/05/15   Page 2 of 15

[Plaintiff]'s security clearance, potentially leading to his termination of employment." Although the Department of Energy eventually reinstated Plaintiff's security clearance, Defendant claimed to have eliminated his position in the interim due to lack of funding. When Plaintiff could not find other work with Defendant within thirty days, Defendant terminated his employment. Plaintiff claims this termination violated of two of Defendant's policies: P713-1, which governs reductions in force at Los Alamos National Laboratory,[1] and P734, which addresses the impact of an employee's loss of security clearance.

Plaintiff's complaint, filed in state court on July 23, 2014, alleges three state-law claims. *See* (**Doc. 1 Ex. A**), Complaint. In Count I, Plaintiff alleges that the terms and conditions of his employment formed an express or implied contract that Defendant breached by failing to follow P713-1, P734, and other policies concerning the confidentiality of employment and security records. *Id.* at 5. Count II alleges breach of implied covenant of good faith and fair dealing due to Defendant's wrongful acts. *Id.* Finally, Count III alleges a prima facie tort, as Plaintiff contends that "Defendant's acts were intended to injure [him] or taken with reckless disregard for the certainty that such acts would harm Plaintiff." *Id.* at 6. Plaintiff seeks, *inter alia*, "[a]ctual and compensatory damages sufficient to make [him] whole." *Id.* at 7.

Defendant filed its Notice of Removal in this Court on August 27, 2014, pursuant to 28 U.S.C. §§ 1331 and 1441. As grounds for removal, Defendant states that P713-1 is governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq*. As such, Defendant argues that Plaintiff's state law claims regarding his termination, if proven, would describe a violation of ERISA § 510, which prohibits interference with rights protected by

---

[1] Plaintiff's complaint refers to this policy as "P713." Judging from the filings on the docket to date, the parties are in agreement that these policies are one and the same. *See* (**Doc. 14**), Plaintiff's Response to Defendant's Motion to Dismiss Plaintiff's Complaint, at 5-6.

ERISA. Therefore, Defendant concludes, the claims are completely preempted under ERISA § 502, the law's civil enforcement provisions.

Defendant later filed a motion to dismiss, contending that Plaintiff fails to state any claims under state law because his causes of action are completely preempted by ERISA's civil enforcement provisions. The crux of Defendant's position is that "[a]ll three counts of the Complaint are premised on the allegation that Plaintiff's employment was terminated in violation of [P713-1], which provides severance benefits to eligible employees."

### DISCUSSION

Although this matter comes before the Court in part on a motion to dismiss for failure to state a claim, Defendant's motion—indeed, Defendant's removal of this case—implicitly raises questions of subject-matter jurisdiction. *See Felix v. Lucent Techs.*, 387 F.3d 1146, 1160 n.14 (10th Cir. 2004) (noting that complete preemption is "a subject matter jurisdictional requirement" (quotation omitted)). If, as Defendant asserts, Plaintiff's claims are subject to complete preemption under ERISA, then this Court has jurisdiction over the matter and may proceed to consider Defendant's motion to dismiss. On the other hand, if Plaintiff is correct that his claims are not completely preempted by ERISA, then jurisdiction cannot exist pursuant to 28 U.S.C. § 1331 since all of his claims are grounded in state law. In that case, the Court will be required to remand the matter to state court for any further proceedings. *See* 28 U.S.C. § 1447(c).

Because it would be improper for the Court to weigh the legal sufficiency of Plaintiff's claims if subject-matter jurisdiction is lacking, the Court begins by addressing the question of ERISA preemption from a jurisdictional standpoint. Since Defendant seeks to invoke the Court's jurisdiction via removal, it bears the burden of establishing that such jurisdiction exists. *See Huffman v. Saul Holdings Ltd. P'ship*, 194 F.3d 1072, 1079 (10th Cir. 1999). "Doubtful cases

must be resolved in favor of remand." *Thurkill v. Menninger Clinic, Inc.*, 72 F. Supp. 2d 1232, 1234 (D. Kan. 1999) (citing *Laughlin v. Kmart Corp.*, 50 F.3d 871, 873 (10th Cir. 1995)).

## I.      ERISA Preemption of State-Law Claims

"The purpose of ERISA is to provide a uniform regulatory regime over employee benefit plans. To this end, ERISA includes expansive pre-emption provisions which are intended to ensure that employee benefit plan regulation would be 'exclusively a federal concern.'" *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004) (internal citations omitted). Although this sounds simple enough in theory, "[a]ny court forced to enter the ERISA preemption thicket sets out on a treacherous path." *Kidneigh v. UNUM Life Ins. Co. of Am.*, 345 F.3d 1182, 1184 (10th Cir. 2003) (quotation omitted). Part of the difficulty revolves around determining the nature of the asserted preemption itself.

ERISA preemption comes in two flavors: "(1) 'conflict preemption' and (2) remedial or 'complete preemption.'" *Coldesina v. Estate of Simper*, 407 F.3d 1126, 1135 (10th Cir. 2005). Conflict preemption depends on ERISA § 514(a), codified at 29 U.S.C. § 1144(a), which states that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" that ERISA covers. However, conflict preemption is merely a federal defense to a plaintiff's suit. *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1987) (citation omitted). "As a defense, it does not appear on the face of a well-pleaded complaint, and, therefore, does not authorize removal to federal court." *Id.*

Accordingly, Defendant's claim of subject-matter jurisdiction relies on ERISA's civil enforcement provision, which is said to "completely preempt" state law. Codified at 29 U.S.C. § 1132(a), ERISA § 502(a) creates a cause of action for an ERISA plan participant or beneficiary "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms

of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). The same statute also creates a cause of action for a participant or beneficiary "(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." *Id.* § 1132(a)(3). "[T]he preemptive force of § 502(a) of ERISA is so 'extraordinary' that it converts a state claim into a federal claim for purposes of removal and the well-pleaded complaint rule." *Felix*, 387 F.3d at 1156 (quoting *Taylor*, 481 U.S. at 65).

Defendant asserts in its removal notice that ERISA § 502(a) is implicated because Plaintiff's claims could arise under ERISA § 510. That provision prohibits a person from "discharg[ing] . . . disciplin[ing], or discriminat[ing] against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan . . . or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan." 29 U.S.C. § 1140. "By its terms § 510 protects plan participants from termination motivated by an employer's desire to prevent a pension from vesting." *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 143 (1990). ERISA § 502(a) provides the exclusive remedy when a person has violated this proscription. *Id.* at 144-45. Therefore, "'[w]hen it is clear or may fairly be assumed that the activities which a State purports to regulate are protected' by § 510 of ERISA, 'due regard for the federal enactment requires that state jurisdiction must yield.'" *Id.* at 145 (quotation omitted).

"[A] state law claim is only 'completely preempted' . . . if it can be recharacterized as a claim under § 502(a)." *Felix*, 387 F.3d at 1156. A cause of action can be so characterized if (1) a plaintiff could have brought his claim under ERISA § 502(a), and (2) there is no other

5

independent legal duty implicated by a defendant's actions. *See Aetna Health*, 542 U.S. at 210. A plaintiff can bring his claim under § 502(a) if he has standing to bring an action under that statute, meaning that he is seeking to recover benefits due to him under an ERISA plan or to enforce or clarify rights under an ERISA plan. *See Felix*, 387 F.3d at 1158 (citations omitted); *see also Memorial Health Sys. v. Aetna Health, Inc.*, 730 F. Supp. 2d 1289, 1294 (D. Colo. 2010). "[A]s [courts] must construe removal strictly, reasonable doubts must be resolved against the complete preemption basis for it." *Lontz v. Tharp*, 413 F.3d 435, 441 (4th Cir. 2005).

## II.     Plaintiff's Standing Under ERISA § 502(a)

Defendant argues that P713-1, its reduction-in-force ("RIF") policy, constitutes an employee benefit plan subject to ERISA regulation because it contains provisions on severance pay for employees terminated under the policy. As such, Defendant effectively contends, any claim for relief regarding P713-1 must necessarily seek relief under an ERISA plan. Plaintiff, by contrast, asserts that P713-1 is not an ERISA plan and that his claims do not seek benefits from an ERISA plan. The Court concludes that Plaintiff has the better argument here, because (1) P713-1 is not an ERISA plan, and (2) the factual bases of Plaintiff's claims do not involve the severance portions of that policy.

### A.   P713-1 is Not an ERISA Plan

An "employee welfare benefit plan" under ERISA is defined as "any plan, fund, or program . . . established or maintained by an employer . . . for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise," certain benefits. 29 U.S.C. § 1002(1). Building off of this definition, the Tenth Circuit "has adopted five criteria that must be established for an 'employee welfare benefits plan' to fall without ERISA's scope: '(1) a plan, fund, or program (2) established or maintained (3) by an employer (4) for the

6

purpose of providing [the relevant] benefits (5) to participants or their beneficiaries.'" *Sipma v. Mass. Cas. Ins. Co.*, 256 F.3d 1006, 1009 (10th Cir. 2001) (quoting *Gaylor v. John Hancock Mut. Life Ins. Co.*, 112 F.3d 460, 464 (10th Cir. 1997)).

To determine whether P713-1 meets these criteria, the Court first examine the text of the policy itself. *See* (**Doc. 1 Ex. B**), No: P713-1. Section 1.0 describes the purpose of the policy and gives some examples of events that might trigger its application. Section 2.0 explains the authority under which the policy was issued and describes the employees who are covered by the policy. Section 3.0, comprising the bulk of the policy, breaks down the various procedures that must be followed when a reduction occurs. Section 4.0 discusses the responsibilities of the laboratory director, the human resources division leader, the affected employee's manager, and the employee himself under the policy. Ten other brief sections touch on the implementation of the policy, training needs, exceptions and variances, the maintenance of records, relevant definitions, the policy's revision history, references, forms, attachments, and contact information.

Section 3.0, "Procedures," breaks down further into four subsections. Section 3.1 describes how positions and employees may be selected for RIF, including any impact on term or contractor positions, procedures to follow when multiple employees in comparable positions might be subject to RIF, and the use of job performance as a criterion for selection. Section 3.2 requires that RIF candidates receive appropriate notice of their effective date of termination. Section 3.3 allows Defendant to assist RIF candidates in finding other employment positions at Defendant's discretion. Finally, Section 3.4 provides that employees terminated under P713-1 are eligible for severance pay, discusses the fixed method for calculating the amount of such pay, notes that such pay is made as one lump sum, requires recipients to sign a waiver and release of claims, and states that any rehired employees must repay some portion of their severance pay.

The Court assumes for the sake of argument something that the parties contest—that Section 3.4 of P713-1 is itself an ERISA plan or part of an ERISA plan. This assumption is not especially outlandish. *See* 29 U.S.C. § 1002(1)(B)[2]; *see also Massachusetts v. Morash*, 490 U.S. 107, 116 (1989) ("[Plans to pay employees severance benefits, which are payable *only* upon termination of employment, are employee welfare benefit plans within the meaning of the act."). However, the question is not whether one part of P713-1 is an ERISA plan—the question is whether, as Defendant alleges, P713-1 *as a whole* constitutes such a plan. The Court concludes that it does not.

First, P713-1 does not exist "for the purpose of providing" severance benefits to participants. *Cf. Sipma*, 256 F.3d at 1009. The policy itself is entitled "Reduction in Force," and the very first section reads, "[t]he purpose of this document is to describe the Reduction in Force (RIF) process, which may result from [certain triggering conditions]."  Nothing in this section itself discusses a purpose of providing severance benefits to any ERISA beneficiaries. Further, a review of the policy as a whole makes it apparent that the section discussing severance is but a small part of a larger process governing the elimination of employment positions. The purpose of P713-1 is exactly what that document says—to set a policy for reductions in force.

P713-1 also fails to satisfy the first *Sipma* factor. "A 'plan, fund, or program' [under ERISA] exists if 'from the surrounding circumstances a reasonable person can ascertain the intended benefits, a class of beneficiaries, the source of financing, and the procedures for receiving benefits.'" *Gaylor*, 112 F.3d at 464 (quotations omitted).  Here, P713-1 includes certain provisions governing severance pay, but only in broad strokes as part of a larger reduction-in-force policy. There is nothing in P713-1 from which a reasonable person could

---

[2] An "employee welfare benefit plan" includes certain plans that provide "any benefit described in section 186(c) of this title." 29 U.S.C. § 1002(1)(B). "The latter section lists, *inter alia*, money paid by an employer to a trust fund for severance benefits." *Fort Halifax Packing Co., Inc. v. Coyne*, 482 U.S. 1, 18 n.11 (1987).

ascertain the source of financing for any ERISA-qualified benefit, including severance pay. Further, since P713-1 as a whole does not exist "for the purpose of providing" ERISA benefits, a reasonable observer would struggle to identify termination via the RIF process as an "intended benefit."

Defendant objects to this reasoning, insisting that "the LANS severance benefits plan" creates "an ongoing administrative program" that "applies broadly to Laboratory employees . . . and requires that LANS have in place an administrative scheme for making eligibility determinations, calculating any severance benefits due, processing any payments due, evaluating whether severance has been forfeited . . ., and evaluating any requests for exceptions or variances under the plan." This description might overstate the actual text of Section 3.4, which includes no instructions regarding who makes any eligibility determinations, how payments are processed, and how or by whom forfeiture notices or variance requests are evaluated. In any case, though, this description only applies to the section on severance pay alone. That the severance provisions alone may constitute an employee benefit plan says nothing about whether P713-1 as a whole should be considered an ERISA plan for preemption purposes.

Additionally, Defendant claims that the Summary Plan Description for its "Health & Welfare Benefit Plan for Employees," (**Doc. 1 Ex. C**), sets forth an ongoing administrative scheme for benefits while listing part of P713-1 in its "Benefit Program Material" appendix. A Summary Plan Description constitutes a key component of an ERISA plan. *See Chiles v. Ceridian Corp.*, 95 F.3d 1505, 1511 (10th Cir. 1996) (citing *Jensen v. SIPCO, Inc.*, 38 F.3d 945, 949 (8th Cir. 1994)), *abrogated on other grounds by CIGNA Corp. v. Amara*, 563 U.S. ---, 131 S. Ct. 1866 (2011). For that matter, a policy can qualify as an ERISA plan even if it is just one part of an employee welfare benefits plan. *See Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 107

(1983). However, the "Benefit Program Material" portion of the Summary Plan Description specifically refers to the "(Severance)" portion of P713-1; nothing in any of the provided excerpts of that document mention or relate to any other component of the reduction-in-force policy. The Court cannot conclude that the entirety of P713-1 qualifies as an ERISA plan merely because an ERISA plan refers to a small portion of that policy in its program materials.

Indeed, although *Shaw* clarifies that any part of an ERISA plan can itself be considered an ERISA plan, Defendant fails to cite any authority for the converse proposition—that an entire policy addressing matters completely unrelated to ERISA may be transformed into an ERISA plan because one component of that policy may be characterized as such a plan. At most, Defendant cites ERISA § 514(a) to assert that P713-1 "relate[s] to an employee benefit plan governed by ERISA," then spends several pages discussing that provision's broad statement that state laws are preempted "insofar as they may . . . relate to an employee benefit plan." However, that language governs conflict preemption rather than complete preemption, and only the latter can justify the Court's exercise of removal jurisdiction. *E.g.*, *Taylor*, 481 U.S. at 63 (citation omitted). Thus, the Court need not and should not decide whether Plaintiff's claims can be characterized as "relat[ing] to" an ERISA plan, as such a determination is irrelevant for the purpose of determining whether complete preemption applies.

In short, a reduction-in-force policy is not an ERISA plan simply because one of its provisions concerns severance pay. Thus, the fact that Plaintiff's breach of contract and related claims cite a policy that includes a severance plan as one component of many does not automatically bring those claims under the umbrella of complete preemption.

B.  Plaintiff's Claims Do Not Involve an ERISA Plan

Further, even though the severance portion of P713-1 could be classified as an ERISA plan, it is plain from the face of Plaintiff's complaint that the factual bases of his claims have nothing to do with that provision. To explain why this is the case requires some discussion of analogous and distinct cases.

In *Ingersoll-Rand*, the plaintiff brought state-law tort and contract claims alleging that his former employer fired him to avoid making contributions to his pension fund. *See* 498 U.S. at 135-36. However, ERISA § 510 plainly addresses situations where an employee is "discharge[d] . . . for the purpose of interfering with the attainment of any right to which [he] may become entitled under the plan." *Id.* at 143-44. Thus, the plaintiff's claims were completely preempted, as his "cause[s] of action purport[ed] to provide a remedy for the violation of a right expressly guaranteed by § 510 and exclusively enforced by § 502(a)." *Id.* at 145.

By contrast, in *Memorial Health*, a healthcare provider and an insurer entered into an agreement by which the plaintiff would provide medical care to the defendant's members in exchange for reimbursement under a compensation schedule. *See* 730 F. Supp. 2d at 1292. The plaintiff later filed a claim of breach of contract after the defendant allegedly underpaid, and the defendant then asserted that the claim was completely preempted because the plaintiff was asserting a right to benefits on behalf of some of the defendant's members. *Id.* The district court determined by a preponderance of the evidence that the plaintiff's claims did not implicate an ERISA plan or seek benefits under the terms of such a plan. *See id.* at 1296-97. Moreover, the agreement created independent obligations between the parties outside of ERISA or an ERISA plan's terms. *See id.* at 1297-98. Accordingly, the breach claim was not completely preempted. *See id.* at 1298.

In the District of Kansas, when a plaintiff alleged breach of his employment contract, the defendant argued that the plaintiff had received severance pay and that his claim therefore "reduce[d] to one of whether Plaintiff may recover something different for job abolishment than the [defendant's] Severance Plan administrator awarded him." *Thurkill*, 72 F. Supp. 2d at 1235. The court rejected this argument, holding that the defendant's liability "d[id] not depend upon the existence of its severance pay and benefit package. For that matter, [the plaintiff] could prevail in proving his claim regardless of the existence of [the] severance plan." *Id.* at 1237 (citing, *e.g.*, *Wilcott v. Matlack, Inc.*, 64 F.3d 1458, 1460 (10th Cir. 1995)). The court therefore concluded that it "ha[d] no basis for recharacterizing the plaintiff's claim as one 'to recover benefits due' or 'to enforce . . . rights under the terms of the plan,'" since the matter was "a case in which beyond the simple need to refer to the Plan, the Plan is irrelevant to the dispute." *Id.* at 1236 (quotations omitted). Since it was "not sufficient for preemption that the plaintiff's claim may economically impact [the defendant]'s severance plan," the court held "that ERISA d[id] not preempt, completely or otherwise, the plaintiff's action." *Id.* at 1237.

Finally, in the District of New Mexico case of *Ruby v. Sandia Corp.*, a physicist working at Sandia National Laboratories alleged that he was wrongfully terminated in violation of the state's human rights act as well as common law torts. *See* 699 F. Supp. 2d 1247, 1253-54 (D.N.M. 2010). In his complaint, the plaintiff claimed that the defendant terminated him both because of his advanced age and to prevent him from obtaining retirement benefits. *See id.* at 1269-70. The district court concluded that the state's human rights act created an independent legal duty for the defendant not to discriminate or retaliate against workers because of their age, and as such his age-discrimination and retaliation claims under that act were not completely preempted. *See id.* at 1276-79. Conversely, the court found that the plaintiff's common-law

claims were premised entirely on allegations that the defendant was seeking to deprive him of his retirement benefits. *See id.* at 1280-82. Because there was no independent legal duty implicated by those latter claims outside of ERISA and the benefits plan, the court determined that those claims were completely preempted. *Id.*

These cases, along with the relevant statutory language, lead to the conclusion that Plaintiff does not have standing to bring an action under § 502(a). Unlike *Ingersoll-Rand* and *Ruby*, Plaintiff never represents in his complaint that he is seeking employee benefits pursuant to either ERISA or state law. Instead, like *Memorial Health* and the human rights act claims in *Ruby*, the record does not demonstrate that Plaintiff is motivated by the prospect of recovering benefits or clarifying or enforcing rights under an ERISA plan. *Cf.* ERISA § 502(a)(1)(B). Nor do the facts alleged in Plaintiff's complaint or the claims themselves provide any basis for recharacterizing Plaintiff's claims as seeking "to enjoin any act or practice which violates . . . the terms of [a] plan" or to obtain equitable relief to enforce or redress violations of plan terms. *Cf.* ERISA § 502(a)(3). To the contrary, from the face of Plaintiff's complaint, Defendant was allegedly motivated to revoke Plaintiff's security clearance and terminate his employment not for the purpose of interfering with plan benefits in violation of ERISA § 510, but simply based on its managers' view that Plaintiff was "an unlawful hunter." As in *Thurkill*, the existence of an ERISA plan is entirely incidental to Plaintiff's claims.

Citing *Ingersoll-Rand*, Defendant rejects Plaintiff's statement in his response brief that he is not seeking severance payment under the relevant provision of P713-1. To be sure, *Ingersoll-Rand* undoubtedly stands for the proposition that a plaintiff's failure or refusal to assert a cause of action under ERISA does not itself defeat complete preemption. *See* 498 U.S. at 136, 143-45. Similarly, preemption cannot be defeated just because a plaintiff does not seek recovery of

pension benefits. *See id.* at 145. What does matter is whether, on the face of his complaint, a plaintiff's claim falls under ERISA's civil enforcement provisions, regardless of how the plaintiff casts that claim. *See id.* at 144-45. Thus, even though the plaintiff in *Ingersoll-Rand* did not bring an ERISA claim in his complaint, his claims were completely preempted because he alleged that the defendant terminated him to prevent his pension from vesting, a cause of action that plainly fell within the purview of § 510. *See id.* Here, however, Plaintiff alleges that Defendant acted to rid itself of an unlawful hunter, not with "the purpose of interfering with the attainment of" any benefits under an ERISA plan. *Cf. id.*; *see also* ERISA § 510. In contrast to *Ingersoll-Rand*, nothing on the face of Plaintiff's complaint implicitly raises a claim that could be brought under ERISA § 502(a).

Plaintiff's factual allegations and legal assertions leave no room for the Court to recharacterize his claims as either arising under ERISA § 510 or otherwise triggering the protections of ERISA's civil enforcement scheme. *Cf. Felix*, 387 F.3d at 1156. Accordingly, Plaintiff's claims are not completely preempted by ERISA.

### III.    Impact on Proceedings

Because Plaintiff's claims arise under state law, involve nondiverse parties, and are not completely preempted by ERISA, the Court lacks subject-matter jurisdiction over this case. *See id.* at 1160 n.14. Consequently, the Court can take no further action except to remand this case to state court. *See* 28 U.S.C. § 1447(c). Accordingly, the Court does not reach the merits of Defendant's pending motion to dismiss.

## CONCLUSION

For the reasons herein stated, this action is REMANDED to the First Judicial District Court, County of Rio Arriba, State of New Mexico. The Clerk of Court is directed to mail a certified copy of this order to the Clerk of the First Judicial District Court and to take the necessary steps to effectuate this remand.

**SO ORDERED**

_____

UNITED STATES DISTRICT JUDGE